**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **CHRISTOPHER G.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No. 1:25-cv-276** |
| | : | **Judge Michael R. Barrett** |
| | : | **Magistrate Judge S. Courter M. Shimeall** |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

**REPORT AND RECOMMENDATION**

Plaintiff, Christopher G., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors. (ECF No. 10.) For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.  BACKGROUND

Plaintiff applied for DIB on March 7, 2018, alleging that he has been disabled since December 26, 2016, due to chronic neck pain, chronic back pain, severe knee pain, bipolar disorder, anxiety, and depression. (ECF No.7-6 at PageID 233). Plaintiff's application was denied initially and upon reconsideration. (ECF No. 7-3 at PageID 69–80, 84–98). Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (ECF No. 7-4 at PageID 113). On March 2, 2020, Plaintiff, who was represented by counsel, appeared and testified at a hearing held

by an ALJ.  (ECF No. 7-2 at PageID 59–67).  On September 18, 2020, the ALJ issued a decision

finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID

36-58).  The Appeals Council denied Plaintiff's request for review, and he filed suit in this Court.

*See* [*Christopher G.*] *v. Comm'r of Soc. Sec.*, S.D. Ohio Case, No. 1:21-cv-195.  (ECF No. 7-10 at

PageID 621–22).  This Court remanded the matter for further administrative proceedings.  (*Id.* at

PageID 623–29).

Subsequently, the Appeals Council remanded this claim with instructions to reevaluate

Plaintiff's RFC.  (ECF No. 7-10 at PageID 632–33).  On remand, the claim was heard by a different

ALJ.  After a hearing, that ALJ issued an unfavorable decision on December 8, 2023, finding that

Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the

Social Security Act.  (ECF No. 7-9 at PageID 538–62, 563–86).

The ALJ found that Plaintiff last met the insured status requirements of the Social Security

Act on September 30, 2018, and applied the five-step sequential process to evaluate his DIB

application.[1]  (ECF No. 7-9 at PageID 543).  Relevant here:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009).

- <u>Step One</u>: The ALJ found that Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of December 26, 2016, through his date last insured of September 30, 2018.  (*Id.*).

- <u>Step Two</u>: The ALJ found that, through the date last insured, Plaintiff had the following severe impairments: disorders of the lumbar and cervical spine, osteoarthritis of the right knee and right thumb base, a depressive disorder, a bipolar disorder, and an anxiety disorder.  (*Id.* at PageID 544).

- <u>Step Three</u>: The ALJ further found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl.  [Plaintiff] must avoid all unprotected heights, moving mechanical parts, and commercial driving.  [Plaintiff] can occasionally operate right foot controls.  He can occasionally operate right hand controls.  He can occasionally reach overhead with the bilateral upper extremities.  He can frequently reach in all other direction[s] with the bilateral upper extremities.  He can frequently handle and finger with the right upper extremity. [Plaintiff] is limited to performing simple, routine, repetitive tasks, but not at a production rate pace (i.e., assembly work).  [Plaintiff] is limited to simple work-related decisions in using judgment and dealing with changes in the work setting.  [Plaintiff] can occasionally interact with the public, coworkers, and supervisors on a superficial basis with superficial defined as not requiring persuading, mediating, or supervising others and no tandem tasks.

(ECF No. 7-9 at PageID 546).

- <u>Step Four</u>: The ALJ relied on the vocational expert's ("VE") testimony and determined that, through the date last insured, Plaintiff was unable to perform his past relevant work as a cleaner II, and maintenance engineer/technician.  (*Id.* at PageID 553).

- <u>Step Five</u>: The ALJ concluded that, through the date last insured, considering his age, education, work experience, and residual functional capacity, and in relying on the VE's testimony, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as a marking clerk, weight recorder, or a laundry article sorter.  (*Id.* at PageID 553–54).  Further, even

if limited to sedentary work instead of light work, the ALJ found that sufficient jobs existed in the national economy to account for Plaintiff's RFC, including weight tester, eyeglass frame polisher, and hand trimmer.  (*Id.* at 554).

The ALJ therefore concluded that, for purposes of his DIB application, Plaintiff was not under a disability, as defined in the Social Security Act, at any time from December 26, 2016, the alleged onset date, through September 30, 2018, the date last insured.  (*Id.* at PageID 555).

The Appeals Council denied Plaintiff's request for review, and this appeal followed.

## II.      RELEVANT RECORD EVIDENCE

The Undersigned has reviewed the portions of the administrative record relevant to the claimed errors raised by Plaintiff.  Rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## IV.      STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.  ANALYSIS

Plaintiff's sole contention in his Statement of Specific Errors is that upon remand, the ALJ's RFC finding did not properly account for the state agency psychological consultant's, Kristin Haskins, Psy.D., opinion when the ALJ changed Dr. Haskins' limitation of "no work around others" to "no tandem tasks."  (ECF No. 10 at PageID 828–32).  The Commissioner counters that the ALJ duly explained where and why she departed from the state agency psychologists' findings and further argues that the ALJ properly assessed Plaintiff's RFC based on the entire record.  (ECF No. 12 at PageID 839–45).

### A.  Legal Standard

A plaintiff's RFC "is defined as the most [he] can still do despite the physical and mental limitations resulting from [his] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a)(1). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other

medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). For medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must weigh the opinion with various factors in mind. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). Among them, supportability and consistency are the most important, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2); *see also* 20 C.F.R. § 404.1520c(c)(2) (noting the ALJ may discuss the other factors but is not required to do so).

An ALJ must "provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). In other words, the ALJ must "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)); *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at *3 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An 'ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

Although it can be more difficult for an ALJ to distinguish the supportability and consistency factors of a state agency reviewer's opinion because they do not have their own treatment records, the ALJ nevertheless can conduct a supportability analysis to the extent the state agency reviewer "clearly identifies the documents relied upon to support their opinions." *Russetta*

6

*W. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-02260, 2024 WL 3982948, at *4 (S.D. Ohio Aug. 29, 2024), *report and recommendation adopted* 2024 WL 4266520 (S.D. Ohio Sept. 23, 2024).

### B. The Relevant Record Evidence

The narrow issue before the Court is whether the ALJ erred by changing a state agency reviewer's opined mental RFC limitation into more "vocationally relevant terms" without additional explanation. On remand, the ALJ crafted a new RFC, and as it relates to the mental RFC limitations, the ALJ stated as follows:

> \*        \*        \*

> The [Plaintiff] is limited to performing simple, routine, repetitive tasks, but not at a production rate pace (*i.e.,* assembly work). The [Plaintiff] is limited to simple work-related decisions in using judgment and dealing with changes in the work setting. The [Plaintiff] can occasionally interact with the public, coworkers, and supervisors on a superficial basis with superficial defined as not requiring persuading, mediating, or supervising others and no tandem tasks.

(*Id.* at 546).

The only medical opinions relevant to the issue here are those of state agency reviewers Drs. Tangeman and Haskins.

With respect to Plaintiff's concentration, persistence, and pace limitations ("CPP"), Dr. Tangeman found on initial review that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (ECF No. 7-3 at PageID 79). Summarizing the CPP limitations in narrative form, Dr. Tangeman opined that Plaintiff was "capable of simple and some complex tasks in a static environment without strict time or production quotas." (*Id.*).

7

As it related to Plaintiff's social interaction limitations, Dr. Tangeman found him to be moderately limited in his ability to interact appropriately with the public, accept instructions and criticism from supervisors, and get along with coworkers or peers. (*Id.*). Dr. Tangeman narratively summarized Plaintiff's social interaction limitations, opining that Plaintiff was "[c]apable of superficial and intermittent contact with coworkers and supervisors." (*Id.* at PageID 80).

Dr. Haskins conducted a review at the reconsideration level and found the same moderate CPP limitations as Dr. Tangeman. (*Id.* at PageID 97). Her narrative summary, however, differed slightly from Dr. Tangeman's, in that she opined Plaintiff was "[c]apable of simple and some complex short cycle tasks in a static environment without strict time or production quotas **where [he] can work away from others**." (*Id.*) (emphasis added).

With respect to Plaintiff's social interaction limitations, Dr. Haskins found, similar to Dr. Tangeman, that Plaintiff was moderately limited in his interactions with the public, and his ability to accept and respond appropriate to criticism from supervisors and get along with coworkers. (*Id.*). Her narrative explanation mirrored Dr. Tangeman's with respect to Plaintiff's social interaction capacities. (*Id.*).

The ALJ considered both Dr. Tangeman's and Dr. Haskins' opinions, noting that their "mental RFCs are generally persuasive" and that their "opinions [were] generally consistent with the medical evidence of record which shows the claimant has some limitations but is not as limited as alleged." (ECF No. 7-9 at PageID 550). In full, the ALJ explained with respect to Plaintiff's mental RFC that:

> The mental RFCs are generally persuasive; however, the undersigned has made some changes to the mental RFC to include vocational or more specific terms. For example, with regard to the social interaction limitations, intermittent was changed to occasionally and **no work around others has been changed to no tandem tasks**. Intermittent is not a vocational term.

8

However, these opinions are generally consistent with the medical evidence of record which shows the claimant has some limitations but is not as limited as alleged. For example, the claimant has reported symptoms such as low energy, excessive worry, and difficultly sleeping all of which would presumably affect the claimant['s] ability to concentrate, persist, and maintain pace (4F/5; 12F/4; testimony *for example*). He also testified that he has difficulty concentrating and focusing (testimony). Additionally, notes in the record noted the claimant was preoccupied about health issues which would affect this area of functioning (4F/8). A consultative examination found the claimant displayed adequate effort, persistence, and pace (4F/6). The claimant was able to perform serial 3 task which suggests he has some ability to concentrate, persist, and maintain pace (4F/7).

Specifically, the social interactions limitations that the state agency outlined though not in vocational terms are supported by and consistent with record which shows the claimant has some difficulty interacting with others. For example, the claimant reported in the record that that he keeps to himself, is nervous or mistrustful around others, and is easily irritated (4F/4, 5; 8F/8 *for example*). At times, he was described as withdrawn or irritable (8F/4, 6, 19). At the hearing, the claimant stated that he has panic attacks when he goes in public and tries to keep to himself (testimony). However, according to his statements, he is also able to get along with others and shop (4F). Further, the medical evidence shows that medical sources described him as pleasant and cooperative and appeared comfortable with normal behavior during appointments (*i.e.,* 4F). In terms of supportability, both doctors cited evidence that showed the claimant presented as depressed an[d] anxious at the psychological consultative examination, that he attended counseling in the past and is currently treated by a therapist, that his eye contact was good, concentration, and attention adequate, and his insight and judgment were adequate (1A/8, 10). The[y] also cited to his reported activities of daily living including caring for his pets, shopping for short periods of time, that he can pay attention for 10-20 minutes, and that he socialized with friends and family (1A/6). At the reconsideration level the state agency also cites to his treatment records which shows depressed and withdrawn moods, reported nervousness in public, distrust due to abuse in the past, panic attacks, irritability, fearfulness, anger, and racing thoughts (3A/7).

(*Id.* at PageID 550) (paragraph breaks added for readability) (emphasis added).

### C. The ALJ Failed to Sufficiently Explain Why a State Agency Reviewer's Opined Limitation Translated to a Different, Less Restrictive "Vocationally Relevant" Term

Plaintiff takes issue with only one part of the ALJ's analysis—her translation of "no work around others" to "no tandem tasks," contending that the ALJ "unilaterally substituted a materially

different limitation for [] a limitation specifically opined by the Agency expert." (ECF No. 10 at PageID 831). Plaintiff further contends that the limitation did not need to be altered at all because the VE was able to testify about such a limitation and that it "would be considered an accommodation and therefore not be consistent with completive employment." (*Id.*).

Upon review, the Undersigned agrees that the ALJ erred when it substituted a less disabling "no tandem tasks" restriction for the opined "no work around others" limitation, and that the ALJ failed to explain the basis for the substitution.

As an initial matter, the Undersigned finds that "no work around others" and "no tandem tasks" are different restrictions. Courts in this district have previously found that "no tandem tasks" is a qualitive assessment on the type of social interactions. *See Kearns v. Comm'r of Soc. Sec.*, No. 3:19-CV-01243, 2020 WL 2841707, at *12 (N.D. Ohio June 1, 2020), *report and recommendation adopted*, 2020 WL 2839654 (N.D. Ohio Feb. 3, 2020) ("The ALJ's limitation to no team or tandem tasks is a qualitative limitation on social interaction and adequately addressed the [expert opinions] that Kearns be limited to superficial interaction with others."); *see also Latisha D. B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-3875, 2023 WL 4727000, at *5 (S.D. Ohio July 25, 2023), *report and recommendation adopted*, No. 2:22-CV-3875, 2023 WL 5531611 (S.D. Ohio Aug. 28, 2023) (collecting cases). Not working around others, though, is a concentration limitation[2] that delineates Plaintiff's ability (or lack thereof) to work in the proximity of others,

---

[2] The Commissioner acknowledges that the "no work around others" limitation is a CPP limitation, not a social interaction limitation. (ECF No. 12 at PageID 844.) But the Commissioner fails to explain why the fact that it is a CPP limitation means that the "ALJ reasonably addressed it by restricting Plaintiff to no tandem tasks." (*Id.*) If anything, this would support the notion that the ALJ erred because the ALJ's opinion appears to lump together "intermittent" interactions and "no work around others" as both vocationally irrelevant social interaction limitations. (*See* ECF No. 7-9 at PageID 550.) Plaintiff does not raise this as a distinct error so the Undersigned will not address it as a separate issue, but the Undersigned fails to see how this mix-up helps the Commissioner's case here or demonstrates the ALJ's decision was supported by substantial evidence and sufficient reasoning.

which is distinct from the quality or number of interactions. *See e.g. Miriah S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-05453-TLF, 2021 WL 12178380, at *2 (W.D. Wash. Apr. 29, 2021) (finding "a limitation on teamwork and frequency of contact with others is not entirely consistent with [an] opined limitation that plaintiff could not work in close proximity to others, given that there exist occupations which may be performed individually and require occasional superficial interaction with coworkers, yet the person's work area may be located in the presence of others or with others nearby.").

Thus, the ALJ did not simply "convert" a limitation into more "vocationally relevant terms"—she substituted a less severe one without explanation. True, the ALJ does provide a lengthy explanation that could arguably construed to support the lesser "no tandem tasks" as a social interaction limitation, but she failed to adequately explain her rejection of the "no work around others" limitation or how that is accurately captured by the substituted limitation. As a Magistrate Judge in a recent and factually similar case explained, an ALJ's failure "to identify any specific evidence that is not consistent with or supported by their opinions in her analysis that would explain her exclusion of" the state agency reviewers' opined limitations warranted remand. *See Allyson F. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-3166, 2024 WL 3451081, at *3–6 (S.D. Ohio July 18, 2024*), report and recommendation adopted*, 2024 WL 4035015 (S.D. Ohio Sept. 4, 2024) (remanding when the ALJ noted it found a state agency reviewer's opinion to be "generally persuasive" but failed to accommodate the opined restrictions or explain the reasons for omitting them).

Further, although the Commissioner is correct that the ALJ was not required to adopt verbatim the state agency reviewer's opinion that Plaintiff not "work around others," the ALJ was still required to explain her reasons for finding such a restriction was not supported by the state

agency reviewer's treatment notes or otherwise inconsistent with the record.  (ECF No. 12 at PageID 840); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x. 267, 275 (6th Cir. 2015) (recognizing that there is no requirement that the ALJ adopt a state agency reviewer's opinion verbatim).  But here, like in *Allyson F.*, nowhere in her opinion does the ALJ discuss *why* the "no work around others" limitation was not supported or consistent with Dr. Haskins treatment notes or the other medical record evidence, nor does she otherwise indicate *how* the "no tandem tasks" limitation adequately reflected Dr. Haskins opinion on that front.  At most, the ALJ's reason was that it was not vocationally relevant.  But such a reason, without more, is inadequate, especially here where the substituted term is less restrictive.  *See Anthony G. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-24, 2023 WL 197432, at *4 (S.D. Ohio Jan. 17, 2023*), report and recommendation adopted*, No. 3:22-CV-24, 2023 WL 1474659 (S.D. Ohio Feb. 2, 2023) (finding error where the ALJ substituted a less restrictive limitation based solely on vocational relevance without further explanation).

At bottom, the ALJ was required to show her work.  *See Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (internal citation omitted).  By failing to do so, the ALJ prevented "this Court from conducting meaningful review to determine whether substantial evidence supports the ALJ's decision."  *Allyson F.*, 2024 WL 3451081, at *5 (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" (quoting 5 U.S.C. § 557(c)(3)(A))) (further citations omitted).  This failure warrants remand.  *See e.g. Hulett v. Acting Comm'r of Soc. Sec.*, No. 3:21-CV-971 JD, 2022 WL 18399609, at *3 (N.D. Ind. Dec. 19, 2022) (remanding back to the Commissioner when the ALJ and

Commissioner failed to explain how the translation of a term into "vocationally relevant terms" made sense given that "the terms seem to have distinct meanings"); *see also Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-CV-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020) (remanding where the ALJ found persuasive a state agency reviewer's opinion but failed to incorporate the opined restrictions or explain that omission); *Wood v. Comm'r of Soc. Sec.*, No. 3:18-CV-76, 2019 WL 1614591, at *3 (S.D. Ohio Apr. 16, 2019), *report and recommendation adopted*, No. 3:18-CV-76, 2019 WL 1958663 (S.D. Ohio May 2, 2019) ("[T]he ALJ must meaningfully explain why certain limitations are not included in the RFC determination, especially when, as here, such limitations are set forth in an opinion the ALJ weighs favorably.")

Finally, to the extent the Commissioner attempted to argue that such an error was harmless because the social restrictions were only moderate, the Court disagrees. (*See* ECF No. 12 at PageID 844–45.) Because the VE testified in response to counsel's hypothetical that an individual with a limitation of not working around others would be more akin to an accommodated work setting rather than something found in competitive employment (*see* ECF No. 7-9 at PageID 583– 84), whether the opined limitation was included in an RFC could have an impact on Plaintiff's ability to work, such that any error would not be harmless. *See e.g. Miriah S.*, 2021 WL 12178380, at *2 (finding remand warranted when the proximity to others limitation was not adequately presented to the VE).

## VI.    CONCLUSION

For these reasons, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**

15